The appeal was heard in January, 1852, and the following opinion of the Court was delivered by
Wakdlaw, Ch.
Two of the defendants, the devisees and surviving children of Thomas Corbett, in their appeal, claim compensation for the valuable buildings erected by him, on the lot on Harleston Green, during his life estate therein. The reasoning of the Circuit decree is very strong, that if the testator had any equitable right to such compensation, he has not assigned it by his will to these defendants; but, waiving this objection, we are concluded by the course of adjudication in this State, from admitting the claim of a tenant for life to be reimbursed for his improvements of the estate.
It is unjust, that one shall be enriched at the expense and to the wrong of another; and Courts of Equity elsewhere, pursuing this maxim, have allowed, to some extent, the benefit of his improvements, to a tenant in common, or other joint owner, who has improved the joint estate, under the honest conviction of exclusive ownership in himself, or under other circumstances equally strong in natural equity. Such relief is extended only *315 where the refusal of it would operate as a fraud, or unconscien-tious hardship, upon the improving co-tenant. He is not wronged in any just sense, if detriment to himself be occasioned by his own folly and wilfulness. If he be cognizant of the rights of his co-tenants, he may either contract with them concerning proposed improvements, or by easy process of partition, he may obtain his share in severalty; and if lie neither so contracts nor severs, before expending his money in improvements, he must either reckon that-his proportion of the'estate will justify the outlay upon the whole, or intend a gratuity to the other owners. To reimburse the improving tenant in common, to the extent of the cost of the improvements to himself, would enable one of prodigality and capricious taste to deprive his fellows in the tenure of all shares in the common estate, by subjecting them to debts for structures and innovations that were valueless and distasteful. It is scarcely less objectionable to allow to an improving tenant in common, by general rule, reimbursement to the extent of the market value imparted by his improvements to the estate ; for the commercial value does not constitute the whole value of an estate. Some changes might increase the price an estate would bring at auction, which would greatly disparage it in the estimation of some of the joint owners: such as the removal of a monumental ruin for the erection of a shop. One who does not wish to sell his undivided share of an estate, can hardly be compelled, consistently with equity, to pay for improvements, so called, that are offensive to his taste, or to his ancestral-and patriotic pride, or disproportionate to his means. Without further pursuing this train of remark, it is enough to say, that our cases have settled the question against the right of an improving tenant in common, to the exclusive benefit of his improvements. Hancock vs. Day, McM. Eq. 69, 298; Thompson vs. Bostick, 26, 75; Holt & Kerr vs. Robertson, 26, 475; Dellett vs. Whitner, Chev. Eq. 127; Thurston vs. Dickinson, 2 Ruh. Eq. 317.
The equity of a tenant for life against remaindermen for the benefit of his improvements, is inferior to that of a tenant in *316 common in like case. The tenant for life is exclusively entitled to the enjoyment of the estate for an indefinite term of time, as measured by the calendar, always long-in his anticipation; and as to him the inference is more natural that he intends his improvements for his personal use He is not interested in the inheritance, and has little pretension to anticipate the interests or the wishes of his successors. He is an implied trustee for the remaindermen, and by general rule in Equity, trustees are not entitled to the profits of their management of the trust estate. His estate is not unfrequently given, rather for the preservation of the rights of the remaindermen, than for his own enjoyment. Where a bounty to him is clearly intended, it is commonly no more than the enjoyment of the estate, in the existing condition, at the time of the gift, or in a progressive condition contemplated by the donor at the time of the gift. Courts of Equity in England, which admit this equity as to improvements more liberally than we do between tenants in common, have not recognized the claim of a tenant for life to compensation for improvements, except in the case where he has gone on to finish improvements permanently beneficial to the estate, which were begun by the donor. Hibbert vs. Cook, 1 Sim. & Stu. 552. The doctrine, as limited, seems to be approved in ex parte Palmer, 2 Hill, Ch. 217. There, an allowance was made to an executor for improvements put by him on an unimproved lot in the city of Charleston, which by subsequent marriage with the widow of testator, he acquired for life; but the general rule against such allowance to a tenant for life is expressly stated. This, as a general rule, is not unconscientious; and in cases which may seem to be proper exceptions to its operation, as in a gift for life of wild lands, in such terms as clearly import an intended bounty to the tenant for life, which cannot be enjoyed in the existing condition of the subject, the tenant may obtain, by timely application to this Court, either a sale of the whole estate, so that he may enjoy the income, or authority to make improvements permanently beneficial; and he suffers from his own wilfulness, if he proceed upon his own notions of improvement, without asking *317 aid or advice. The Court may sanction what it would have previously authorized, but it encourages no experiments upon its power of retroactive relief.
The inference of gratuity, rather than charge, is made against the heady improver, who disdains to consult in advance his successors in interest, or the Court which may provide for their rights and their wishes. In the present case, the improvements were made by a father on land to which his children were entitled after his life, and as he in his life time made no claim for a debt on account thereof, it is fitly presumed that he intended his improvements as an advancement.
Under the Act of 1791, the Commissioners to whom the writ of partition is directed, have authority to make specific division of the premises, or to assign the whole to one or more of the parties in interest, as well as to recommend a sale. In a proper case, this Court might instruct the Commissioners to assign to the parties, respectively, such parts of the estate as would best accommodate them, and be of most value to them, with reference to their several positions to the property before partition. Storey vs. Johnson, 1 You. and Col. 538, 2 Y. and C. 586. But in the present case, we decline to interfere with the discretion of the Commissioners by instructions in advance, as we do not see that the surviving children of Thomas Corbett have any superior claims to his improvements, to the daughter of his deceased son.
The defendants’ fifth ground of appeal raises the question, whether under the codicil to the will of John Harleston, Mrs. Elizabeth Corbett took an estate in fee conditional in Farmfield and the tract in St. Thomas’ parish, with the incident of an estate for life by the curtesy in her surviving husband. On this question, this Court has not yet attained a satisfactory conclusion ; and this part of the case is reserved for future judgment.
If this question be resolved in favor of the defendants, the parties -to take the lands, and the shares in which they will take, may be different from those declared in the Circuit decree. In that event, too, the claims for rents and profits by the plaintiff *318 and by the defendant, Mary Corbett, would extend to the time only since Thomas Corbett’s death ; and of course, there would be no room for the application of the statute of limitations.
It is difficult to see, in the facts of this case, anything which should limit the demand of Mary Corbett for rents and profits, from the accrual of her right, any more than that of the plaintiff, unless it be by the statute of limitations. If by our ultimate determination, the claim for rents and profits by the plaintiff and Mary Corbett, shall reach beyond the death of Thomas Corbett, the term of the bar of the statute of limitations will become an important inquiry. We are at -present inclined to the conclusion, that, as a general rule, the claim for rents and profits is a personal demand, a debt not by speciality, and is barred by the term which would bar the suits for an analogous claim at law, account, assumpsit, and debt on simple contract. But it is doubtful whether this rule applies to the cases of tenants in common. At common law, if one tenant in common take the whole profits, his co-tenants have no remedy against him. Lilt. Sec. 323, and Co. Litt. 26. By 27th section of 4 and 5 Anne, c. 16, an action of account is given to a tenant in common against his co-tenant, who has received more than his just share or proportion of the profits; but this remedy extends only to the actual receipt of rents and profits, and not to the case where the tenant in common is in the occupation and enjoyment of the premises. Wheeler vs. Horne, Willes, 208. It is clear that the statute of limitations does not run as to the title to the lands themselves, in favor of the tenant in common in possession without actual ouster, against his co-tenants; and we reserve our opinion, whether the incidental claim for profits is governed by the same principle. We decide nothing as to points which may be superseded by our final judgment on the question, whether Thomas Corbett had an estate for life by the curtesy.
It is ordered and decreed, that the Circuit decree be affirmed, and the appeal be dismissed, so far as the partition of the lots on Harleston Green is concerned. In other respects, the questions made by the appeal are reserved for judgment.
Dunkin and Daugan, CC., concurred.
*319 At this Term, January, 1853, the opinion of the Court upon the questions reserved was delivered by
Wardlaw, Ch.
This case was heard at the last sitting of this Court, and an opinion was then pronounced, affirming the Circuit decree, and dismissing the appeal, so far as the partition of the lots on Harleston Green was involved, and reserving our judgment on the other questions made by the appeal. The points reserved depend upon the construction of the codicil to the will of John Harleston, devising the plantation, Farm-field, and a tract of land in the parish of St. Thomas, in trust for his daughter Elizabeth.
When the codicil was executed, the immediate family of the testator consisted of a wife and three daughters — Sarah, the wife of William Read, Jane, affianced, with his approbation, to Edward Rutledge, and Elizabeth, under no contract or engagement of marriage. By his will, the testator had devised to his daughters, in fee simple absolute, the same lands which are settled upon the daughters, respectively, by the codicil.
Besides other provisions, not affecting this litigation, this codicil contains the following devises : “ And it is further my will and pleasure, and I do hereby direct, that the tract of land called Richmond,” &c., “ devised to my darrghter Jane Harles-ton, by my said will, shall be held by my friends William, Edward and Nicholas Harleston : and I do hereby devise the said land to them, and to their heirs and assigns, in trust to and for the use and benefit of my said daughter, Jane and of the said Edward Rutledge, in the event of the said marriage taking place, during their joint lives: and on the death of either of them, then in trust for the survivor, during his or her life : and on the death of both, then in trust for any lawful issue which the said Jane may leave alive, to be equally divided among them, if more than one, share and share alike, in fee simple: saving and reserving to my wife, Elizabeth, her life estate, residence, and right to plant with her negroes, as given by my will, in the house and plantations of Richmond and Farmfield ; but if it should so happen, that on the death of *320 both the said Jane and Edward, there should be no lawful issue of the said Jane then alive, to take the said estate, agreeably to this will, then in trust, that the said tracts of land be equally divided between my daughters, Sarah Read and Elizabeth Harleston, their heirs'and assigns forever. It is further my will, and I do hereby direct, that the plantation called Rice Hope, which I have devised to my daughter Sarah Read, and the plantation called Farmfield, with the five hundred acre tract in St. Thomas’ parish, which I have devised to my daughter Elizabeth Harleston, shall be held on trust, and fo uses similar to and correspondent with those I have directed in the preceding clause, respecting the Richmond place I have devised to my daughter Jane. To effectuate which intent and purpose, I do hereby devise the said tract of land, called Rice Hope, and the said plantation, called Farmfield, and the five hundred acre tract in St. Thomas’ parish, to my friends William, Edward and Nicholas Harleston, and their heirs and assigns, in trust to and for the following uses and purposes : that is to say, as for the plantation Rice Hope, in trust to and for the use of my daughterSarah, and her husband, Dr. William Read, during their joint lives : and on the death of either of them, then in trust for the use of the survivor, during his or her life : and on his or her decease, then in trust for the use of any lawful issue of the said Sarah, to be equally divided among them, if more than one, in fee simple: but if it should so happen, that on the death of the survivor of the said Sarah and William Read, there should be no lawful issue of the said Sarah alive, to take the said estate, agreeably to this will, then in trust, that the said tract of land be equally divided between my daughters, Jane Harleston and Elizabeth Harleston, their heirs and assigns for ever. And as for the plantation called Farmfield, and the five hundred acre tract situated in St. Thomas’ parish, I do hereby devise the same to my.friends William, Edward and Nicholas Harleston, and their heirs and assigns, on the trusts and for the uses hereinafter set forth : that is to say, in trust to and for the use of my said daughter, Elizabeth Harleston, during her life: *321 and on her decease, then in trust-for the use of the lawful issue of my said daughter Elizabeth, to be equally divided among them, share and share alike : and if it should so happen, that on the death of my said daughter, she leave no issue then alive to take the said estate, then in trust for the use of my daughters, Jane Harleston and Sarah Read, their heirs and assigns forever.”
Elizabeth Harleston, the devisee of the lands which are the subject of this suit, after the death of her father, became the wife of Thomas Corbett and the mother of nine children. She died September 17, 1837, and her issue then surviving were three children, John H., Margaret H. and Thomas, and two grandchildren, Richard C. Laurens, son of defendant, Margaret H., and Elizabeth Corbett, the plaintiff. Of the six children of the said Elizabeth Harleston, who pre-deceased her, namely, Thomas, Richard, Elizabeth, Elizabeth Sarah, Joseph and John, all died infants, intestate and unmarried, except' Richard, who attained full age, and died leaving one child, the plaintiff, and a widow, the defendant, Mary Corbett. Of the issue that survived Elizabeth Harleston, Thomas, second son of that name, died in 1846, unmarried and intestate, leaving his father, his brother, John H., his sister, Margaret H., and his niece, the plaintiff, equal distributees of his estate. Thomas Corbett, the father, continued in possession of the lands devised to his wife until his death, in July, 1850. This bill was filed Nov. 27, 1850, amongst other things, for partition of the lands devised to Elizabeth Harleston, and an account of the rents and profits. The plaintiff attained full age, March 10,1846, more than four years before the death of her grandfather. The extent of the plaintiff’s title to relief in this matter depends upon the construction of the codicil above recited, as to her share in the lands, and also upon the operation of the statute of limitations, as to her share of the rents and profits.
First, as to to the plaintiff’s share in the lands. It is adjudged in the Circuit decree, upon the authority of Rutledge vs. Rutledge, Dud. Eq. 201, that the children of Elizabeth Harleston; *322 as they were successively horn, took vested interests, opening to let in subsequent issue, and of course diminishing in proportion as the issue increased: and that all descendants took equally with children, under the description of issue. The defendants insist, by their fifth ground of appeal, that the said Elizabeth Harleston either took an estate in fee conditional, with the incident of an estate for life in her surviving husband, by the curtesy: or an estate for life, with contingent remainder to her surviving issue, in exclusion of her issue that died in her life time.
It is a general rule, in the interpretation of a written instrument, that the construction be made from all its parts, so as to give, if reasonable, a consistency to the whole instrument, and avoid discordance in its parts. One part helps to expound another ; and, in ascertaining the meaning of any clause, we should consider the whole context. In this codicil, the testator explicitly declares his purpose, that the lands respectively devised to his daughters, Sarah and Elizabeth, “ shall be held on trusts and to uses similar to and correspondent with those ” created in the preceding clause, respecting the devise of Richmond to Jane. The meaning of this declaration of purpose, by itself, seems plain, that the three daughters should have the same interest, enjoy their several estates, with such change, only, as the variety in their condition required. Elizabeth was not married, like Sarah, nor affianced, with the approbation of the testator, like Jane, and she might never marry, with or without such approbation. No contingent estate, by survivor-ship, in Elizabeth’s future husband, should be implied, under such circumstances: especially when the testator, in undertaking to repeat the declaration of his purposes, omits provision, in her case, for such surviving husband. The same motive which induced the testator to omit provision for the future and unknown husband of Elizabeth, the uncertainty of his suitability, would operate on testator to prevent accretion to the husband’s interests by the death of issue in the life time of the wife. We may imagine motives in a testator for a more strict *323 settlement upon the issue of an unascertained husband of his daughter, hut we should not naturally expect that he would give to such issue estates that might enure to increased advantage of such husband, beyond the contingent rights of husbands, known and approved. Yet such would be the result, in this case, of holding that the issue, as they came into being, tools: vested interests, liable to be transmitted, if they died intestate, to the father and other distributees.
By the careful provision of the testator for cross remainders among his daughters, in case any of them died without surviving issue, we may see his general intent to produce equality among his daughters and their surviving issue. But the language of the testator, in the limitations over, deserves to be carefully considered. In every instance, the gift over is in case the particular legatee leave no issue alive, at her death, to take the estate. I agree to the doctrine of Whitworth vs. Stuckey, 1 Rich. Eq. 404, that the terms employed in the gift over, if defining issue within the rules as to perpetuity, do not necessarily import restriction into the direct gift to issue, so far as real estate is embraced. I may say for myself, without committing my brethren, or intending to impair the authority of the cases upon Bell’s will, and those following the same decision, that I am not satisfied with the reasoning that, even in relation to personalty, if the limitation over, on the failure of issue, be good, the issue necessarily take as purchasers. Chancellor Johnston, however, in the case of Hay vs. Hay, has given satisfactory reasons for some difference of force in the reflex operation of the terms in the gift over, when applied to the different subjects of realty and personalty. Still, I apprehend the true doctrine to be, that the construction of any particular clause is to be made from the whole instrument, and that the limitation over is to be treated as other portions of the context. If there be a confluence in expression of meaning, or pertinent reference in the terms of gift over to the terms of direct gift to the issue, the language of the gift over may properly satisfy us of the intention of the donor in using the phrase issue in the *324 gift to issuh. The terms of the gift over, as other portions of the contest, are referential and expository in relation to any. particular clause, and not absolutely controlling. In the present case, the description of issue in the gift over aids us in the construction, as to the issue entitled to take by direct gift. The estate is to go to others, if the tenant for life, at her death, “leave no issue, then alive, to take the said estate.” This strongly indicates the purpose of the testator, that the issue to take the estate was the issue alive at the death of his daughter, Elizabeth. This purpose is expressed with more pleonasm in relation to the other two daughters, the words “ agreeably to this will ” being added to the description of issue to take the estate: but the meaning is the same.
Much of the difficulty of this case arises from the prolixity of conveyancing which was usual at the date of this codicil. The testator, having created certain trusts as- to the lands devised to his daughter Jane, and expressed his purpose that his other two daughters should hold their lands on similar and correspondent trusts and uses, undertakes “to effectuate his intent and purpose ” by repeating and specifying the trusts as to the devises to his daughters Sarah and Elizabeth. It is beyond dispute, that under the devise to Jane she took an estate for life, with contingent remainder to her surviving issue, a contingent estate, on his survivorship, to Edward Rutledge for life, being interposed : and Sarah and Elizabeth were intended to take similar and correspondent estates. But the testator, or his scrivener, in the gifts to the issue of the latter two daughters, omitted the qualifying words, which the daughter may “ leave alive at her death,” to be supplied by the context.
We are of opinion that Elizabeth Harleston, under the codicil to the will of her father, took an estate for life, with contingent remainder to her surviving issue, in exclusion of pre-deceased issue;
It is clear, upon the authorities cited in Rutledge vs. Rutledge, without need of reference to other cases, that all the descendants of Elizabeth Harleston, whether in the first or a *325 more remote degree, take the remainder in the estates limited after her life, per cap,Ha-
lt is proper to remark, concerning the case of Rutledge vs. Rutledge, as affecting the construction of the codicil under consideration, that that case was upon a marriage settlement, and that, under marriage settlements, the reasonable and the settled construction is to vest estates in the issue, as purchasers, at the earliest point of time. Besides, there was no such distinct reference, in the context of the instrument there construed, to surviving the mother, qualifying the sense in which the term issue was used, as we find in the present case.
The result of our construction is, that the plaintiff is entitled to one-fifth of the lands devised to her grandmother, Elizabeth Harleston, as issue surviving at the death of said Elizabeth, and to one-fourth of another fifth, as distributee of her uncle Thomas- Mary Corbett, the defendant, has no lot or part in the matter. This conclusion supersedes the necessity of considering the difficult question, whether tenancy by the curtesy is an incident of a fee conditional.
The further question reserved, is as to the operation of the statute of limitations upon the plaintiff’s demand for rents and profits. It is the settled law of this State, that one tenant in common, in exclusive occupation of the estate and per-nancy of the profits, is liable to account to his co-tenants, for their shares of the rents and profits. By the common law, co-tenants have no remedy against a tenant in common, who takes the whole profits. The statute of 4 and 5 Anne, c. 16, § 27, gave an action of account to a tenant in common, against his co-tenant, who had received more than his share of the rents ; but the Court of Law restricted the remedy of the statute to the actual receipt of rents, and denied relief, in the case of exclusive occupation of the common estate, where there was no actual receipt of rents. Wheeler vs. Horne, Willes, 208. This Court, however, afforded relief to co-tenants, where one of the tenants in common was in the exclusive occupation of more than his share of the premises, without receipt of rents in money, or *326 its equivalent. It seems to be just, that while we afford relief to tenants in common, beyond the operation of the statute of Anne, we should hold the additional beneficiaries to the same bar as those within the express terms of the statute. Our Act of limitations bars an account not presented by suit at Law within four years, and account for rents and profits is within the scope of its general terms. In the well considered case of Wagstaff vs. Smith, 4 Ired. Eq. 1, the claim for rents and profits, made by bill in Equity, of a tenant in common, against his co-tenant, in possession of the premises, was held to be restricted by the statute of limitations applicable to account: and we are content to follow such respectable authority. We are of opinion that the statute of limitations bars the plaintiff’s right to an account of the rents and profits, except for the last four years before the filing of her bill.
It is ordered and decreed, that a writ of partition be issued, to divide the plantation, Farmfield, and the tract of land in St. Thomas’ parish, among the parties, according to the principles of this decree.
It is also ordered, that one of the Masters of this Court take an account of the rents and profits of said lands, according to the opinions herein expressed.’
It is further ordered and decreed, that the Circuit decree be modified, as herein indicated, and, in all other particulars, be affirmed.
Johnston, Dunkin and Daboían, CC., concurred.

Decree modified.